**In the Interest of M.T. and S.T., Minor Children,**

**J.H., Father of M.T., Appellant,**

**C.H., Father of S.T., Appellant.**

No. 99–1012.

Court of Appeals of Iowa.

April 12, 2000.

Scot L. Bauermeister of Fitzgibbons Law Firm, Estherville, for appellant-J.H.

Pamela Wingert, Spirit Lake, for appellant-C.H.

Thomas J. Miller, Attorney General, Charles K. Phillips and Janet L. Hoffman, Assistant Attorneys General, and Julie Fillenwarth, Specially Assigned County Attorney, for appellee.

David Forsyth, Estherville, guardian ad litem for the minor children.

Heard by VOGEL, P.J., VAITHESWARAN, J., and SCHLEGEL, S.J.*, but decided by VOGEL, P.J., and MILLER and VAITHESWARAN, JJ.

VOGEL, J.

James and Chris, the respective fathers of Miranda and Shoshawna, appeal the termination of their parental rights. We affirm.

**Background facts.** Miranda T. was born to Melissa T. and James H. on April 6, 1995. Melissa and James lived together following Miranda's birth, but Melissa moved out with Miranda in October of 1996 when James discovered Melissa had been having a relationship with his brother, Chris H. In May of 1997 Miranda was removed from Melissa's care due to neglect, inadequate supervision, and unsafe conditions in the home. Miranda was immediately placed in foster care and remained there following her CINA adjudication in July of 1997.

At the time of Miranda's removal, Melissa was several months pregnant with Chris's child and was reportedly abusing alcohol. Shoshawna was born to Melissa on October 2, 1997, and was immediately removed from her care because of Melissa's history and the home environment. She was adjudicated CINA on January 29, 1998, and placed in foster care with Miranda.

On March 10, 1999, the State moved for termination of James's parental rights to Miranda and Chris's rights to Shoshawna pursuant to Iowa Code sections 232.116(1)(d) and (g) (1997). Following a hearing held on May 12th and 13th of 1999, the juvenile court terminated James's and Chris's parental rights. Melissa consented to termination of her parental rights to both children and does not appeal.

■■■ *Scope of review.* The scope of review in termination cases is de novo. *See In re M.N.W.*, 577 N.W.2d 874, 875 (Iowa App.1998). The grounds for termination must be proven by clear and convincing evidence. *In re E.K.*, 568 N.W.2d 829, 830 (Iowa App.1997). Our primary concern is the best interests of the child; we look to both the child's long-range and immediate interests. *M.N.W.*, 577 N.W.2d at 875.

### I. Chris's parental rights.

*a. Reasonable efforts.* Chris asserts that he was never given the opportunity to prove he could care for Shoshawna due to her immediate removal and the lack of services provided. He contends the court erred in terminating his parental rights because there was a lack of reasonable efforts at reunification.

■■■ We would first note that Chris has been incarcerated since May 1998 and has a tentative release date of December

* Senior judge assigned by order pursuant to    Iowa Code § 602.9206 (1999).

2000. The only service DHS was able to offer Chris during his incarceration was supervised visitation. Chris cannot fault DHS for being unable to provide him additional services when his own actions prevented him from taking advantage of them. *See E.K.*, 568 N.W.2d at 831. In any case, we find that Chris failed to timely demand additional services. *See In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa App.1997); *In re C.D.*, 508 N.W.2d 97, 101 (Iowa App. 1993). Chris did not challenge the reasonableness of reunification services at the CINA proceedings and did not appeal the adjudication. Furthermore, the juvenile court ordered all parties in this matter to list the services requested, ordered and offered prior to the termination proceedings. Chris failed to comply with the order. For all of these reasons, we conclude Chris failed to preserve error on this issue. *See In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa App.1997).

**■ b. Admission of juvenile records.** Chris next contends the court committed reversible error by considering his juvenile history in determining whether his parental rights to Shoshawna should be terminated.

At the termination hearing, the State called a police officer to testify as to Chris's criminal history. Chris objected to the admission of certain records on grounds of hearsay and because they contained his juvenile criminal history. In ruling on the objection, the court stated:

> The objections to Exhibit 3 [Chris's report] with regard to any entries relative to placements in juvenile facilities is sustained, and those items are stricken and will be given no consideration by the Court. The remainder of the exhibit is received and the objection to that portion thereof was overruled.

In its subsequent termination order, the juvenile court referenced Chris's "numerous convictions for burglary, theft, and domestic abuse assault," and the "dozens of burglaries" Chris had committed in the three years before entering prison in 1998.

Chris asserts that he has only had five convictions as an adult, and that the court obviously considered his juvenile record in concluding that his rights should be terminated. We disagree. During his testimony, Chris admitted to committing between fifty and sixty burglaries in the three years before entering prison in 1998. Chris was twenty-four years old at the time of the termination hearing in May of 1999, therefore these "dozens" of burglaries were committed while he was an adult. We find no evidence that the court considered Chris's juvenile record in making its decision. Having considered all of Chris's claims properly before us on appeal, we find that the court's termination of Chris's parental rights to Shoshawna should be affirmed.

## II. James's parental rights.

In its petition, the State sought termination of James's parental rights pursuant to Iowa Code sections 232.116(1)(d) and (g). Although the juvenile court's order did not specify the code section or sections it based termination under, the State concedes that James's parental rights were terminated only under Iowa Code section 232.116(1)(g).

**a. Reasonable efforts.** James argues the court erred in terminating his parental rights because there was a lack of reasonable efforts for reunification. However, James, like Chris, did not appeal the CINA adjudication and did not comply with the juvenile court's order directing him to list requested services. We therefore find James has failed to preserve this issue for appeal.

**b. Applicability of section 232.116(1)(g).** Iowa Code section 232.116(1)(g) allows the juvenile court to terminate parental rights when:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

At the time of filing the petition, Miranda was three years of age and this code section was, therefore, appropriately pled. However, on April 6, 1999, before the termination hearing began, Miranda turned four years old. Despite this fact, the juvenile court made a finding that Miranda was three at the time of the hearing. Apparently, neither James, the State, nor the juvenile court realized the error until well after the termination order had been entered. On appeal James argued the termination should be reversed and remanded to the juvenile court for further proceedings.

Following oral arguments, we ordered a limited remand, "to allow the State to seek leave to amend the petition to include the appropriate Iowa Code section, and to allow the court to receive additional evidence, if necessary." Following notice to all parties, the Court granted the State's amended petition alleging James's parental rights should be terminated under Iowa Code section 232.116(1)(e).[1] The court then entered this ruling: "After visiting with all counsel of record, the Court finds,

there being no resistance, the State's Motion for Leave to Amend to Conform to Proof is granted."

■ We now review whether there was clear and convincing evidence to terminate James's parental rights under the amended petition. The testimony in the record identified Miranda as a four year old child, and established that she had been removed from her parents' care for more than twelve of the last eighteen months.[2] The court found, and we agree, that Miranda had been out of the custody of her parents for twenty-four months at the time of trial. The only argument James made on appeal regarding the code section as originally pled was whether his parental rights could be terminated under an incorrect code section. He has not challenged the court's findings as to the sufficiency of the evidence that Miranda could not be returned to his custody. Finding no resistance to the juvenile court's conforming the amended petition to the proof, we affirm the termination of James's parental rights under Iowa Code section 232.116(1)(e).

***Conclusion.*** We hereby affirm the juvenile court's termination of Chris's parental rights to Shoshawna, and James's parental rights to Miranda.

AFFIRMED.

SACKETT, C.J., takes no part.

---

1. Iowa Code § 232.116(1)(e) provides for termination of parental rights where:

(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be

returned to the custody of the child's parents as provided in section 232.102.

2. During the termination hearing, Melissa testified as follows:
Q: How old is Miranda? A: Miranda is four.
Q: How long has she been, approximately, a child in need of assistance? A: Two years.
Q: How long has she been removed from your custody? A: Two years.
We note that James was not living with Melissa and Miranda at the time of removal in May of 1997 and had not been living with them since October of 1996.